```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 22, 2011
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
AMBER MULLINS,                                          :

                         Plaintiff,     :       10 Civ. 4069 (PAC)

      -against-                                        :       OPINION & ORDER

BONDIB HOTELS, INC., Individually and    :
d/b/a POUGHKEEPSIE GRAND HOTEL
                                                   :
                        Defendant.
-----------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Amber Mullins ("Mullins") claims that Defendant Bondib Hotels, Inc., doing business as Poughkeepsie Grand Hotel (the "Hotel"), violated her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"), by terminating her employment in retaliation for taking maternity leave.[1]

Both parties move for summary judgment. For the reasons discussed below, the Court DENIES both motions for summary judgment.

## FACTS

On November 8, 2005, the Hotel hired Mullins as a front desk clerk. (Def 56.1 Stmt. ¶ 1.) On November 9, 2008, the Hotel conducted a performance evaluation of Mullins and found her "job knowledge" to be "excellent"; her "quality of work", "attendance and punctuality", and "communication and listening" to be "good"; and her "productivity and efficiency" to be "average." (Mullins June 10, 2011 Aff. Ex. A.)

---

[1] While Mullins could have raised discrimination claims under Title VII's Pregnancy Discrimination Act, 42 U.S.C. § 2000e et seq., or New York's Human Rights Law, N.Y. Exec. Law § 296 et seq., see DeMarco v. CooperVision, Inc., 369 Fed. App'x. 254, 255 (2d Cir. 2010), Mullins did not do so. (See generally, Complaint ¶¶ 16-18.) Accordingly, the Court considers only her FMLA retaliation claim.

1

In early 2009, Mullins's co-workers reported that Mullins developed an attitude and was often rude to guests. (Jones Aff. ¶¶ 3-6; Paganelli Aff. ¶ 5; Taylor Aff. 1; Valdovinos Aff. ¶ 5; Ronkese May 12, 2011 Aff. ¶ 4.) Guests and tourism board representatives complained about Mullins to the Hotel. (Jones Aff. ¶¶ 4-5; Valdovinos Aff. ¶ 6; Kangas Decl. ¶ 5; Ronkese May 12, 2011 Aff. ¶ 6; Aug. 15, 2009 Guest Comment Card ¶ 9.) Mullin's managers—Ms. Ronkese and Mr. Valdovinos—spoke to her about her attitude and poor performance, and Ms. Ronkese threatened to terminate Mullins if her treatment of the guests and potential customers did not improve. (Ronkese May 12, 2011 Aff. ¶¶ 4, 5; Valdovinos Aff. ¶ 6; May 19, 2009 Coach and Counsel Document.)

In the spring of 2009, Mullins told Ms. Kangas, the Hotel's General Manager, that she was expecting a baby. (Pl. 56.1 Stmt. ¶ 11.) Ms. Kangas stated that she told Mullins:

> I was worried for her because of the situation with her and her ex-husband and she had a child and I was concerned how she was living. I tried my best to help this young lady. I used to drive her home. I used to bring her clothes because of her situation that she did bring into the hotel. There was a lot of drama with Amber, but in no way -- I said we would be there to support her. . .

(Mullins June 10, 2011 Aff. Ex. E, at 10.) Ms. Kangas was worried because Mullins "was supporting this little boy on her own," her "husband was in prison," and when he got out of prison he "was involved with another female and Amber did not want to end their relationship." (Id.)

On June 20, 2009, the Hotel reduced Mullins's hours from full-time to part-time. (Mullins July 13, 2011 Aff. ¶ 3.)

The Hotel granted Mullins's request for maternity leave without pay, starting on October 2, 2009. (Pl. 56.1 Stmt. ¶¶ 12, 13.) Mullins's baby was born on October 16, 2009. (Pl. 56.1 Stmt. ¶ 14.) On or about December 16, 2009—11 weeks after her maternity leave

began—Mullins received clearance from her physician to return to work.  (Pl. 56.1 Stmt. ¶ 15.)

She contacted the Hotel about returning to work, but Ms. Ronkese, the Front Desk Manager, told Mullins that her employment was terminated.  (Pl. 56.1 Stmt. ¶¶ 16.)  Ms. Ronkese testified that Mullins was terminated for lack of work; the Hotel was entering its slow season—which runs from January to March.  (Pl. 56.1 Stmt. ¶¶ 10, 20.)  Mullins's employment status form states that she was fired for "lack of work" and that she was not eligible for rehire.  (Pl. 56.1 Stmt. ¶ 25.)  Mullins applied for unemployment benefits.  (Pl. 56.1 Stmt. ¶ 19.)  The Hotel did not challenge her unemployment claim on the basis of misconduct.  (Pl. 56.1 Stmt. ¶ 19.)

In 2009, the Hotel fired fifty-four employees.  (Pl. 56.1 Stmt. ¶ 22.)  Only three of these fifty-four employees—all in the housekeeping department—were fired for "lack of work," and each of the three was listed as eligible for rehire.  (Pl. 56.1 Stmt. ¶¶ 22, 24.)

On May 17, 2010, Mullins instituted this action.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  The Court resolves all ambiguities

and draws all factual inferences in favor of the non-movant, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

Under the FMLA, an eligible employee suffering from a serious health condition is entitled to twelve workweeks of leave during any twelve-month period. See 29 U.S.C. § 2612(a)(1), (c). An employee who takes FMLA leave "shall be entitled, on return from such leave ... (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position . . . ." Id. § 2614(a)(1). Employers are "prohibited from discriminating against employees or prospective employees who have used FMLA leave." Di Giovanna v. Beth Israel Med. Ctr., 651 F.Supp.2d 193, 198 (S.D.N.Y. 2009) (quoting 29 C.F.R. § 825.220(c).)

Mullins alleges that the Hotel fired her in retaliation for taking FMLA leave. FMLA retaliation claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004). The plaintiff bears the initial burden of establishing a prima facie case of retaliation; the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination; the burden then shifts back to the plaintiff to show that "more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason." See Di Giovanna, 651 F.Supp.2d at 203-204 (quoting Forde v. Beth Israel Med. Ctr., 546 F.Supp.2d 142, 149 (S.D.N.Y. 2008)).

## ANALYSIS

There is no dispute that Mullins has stated a prima facie case of retaliation under the FMLA. Mullins (1) exercised rights protected under the FMLA, (2) was qualified for her position as front desk clerk, (3) suffered an adverse employment action, and (4) her

termination occurred in circumstances giving rise to an inference of retaliatory intent.  (See Pl. Br. 7; Def. Opp. 1 (conceding Mullins stated a prima facie case).)

    A.  Legitimate, Non-Discriminatory Performance Based Reasons for Termination

Since Mullins demonstrated a prima facie case of discrimination, "a presumption of retaliation is created and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination."  Di Giovanna, 651 F.Supp.2d at 203-204.

"The right to reinstatement under FMLA is not absolute."  Geromanos v. Columbia Univ., 322 F.Supp.2d 420, 428-429 (S.D.N.Y. 2004) (citing Kohls v. Beverly Enters. Wisconsin, Inc., 259 F.3d 799, 804 (7th Cir.2001)); see also Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 175 (2d Cir. 2006).  "FMLA was not intended to provide employees with a greater right to reinstatement or other benefits than they would have had if they had been continuously employed during the FMLA leave period."  Id.

The Hotel argues, inter alia, that it terminated Mullins because her performance was unreliable and because it lacked business when she requested reinstatement.  In support of its argument, the Hotel submitted employee affidavits, documents from Mullins's personnel file, and work schedules.[2]  The affidavits show that in early 2009, Mullins because "nasty to the customers," developed an "attitude," and was often rude to guests. (Jones Aff. ¶¶ 3-6; Paganelli Aff. ¶ 5; Taylor Aff. 1; Valdovinos Aff. ¶ 5; Ronkese May 12, 2011 Aff. ¶ 4.)  On one occasion Mullins "argued in a loud voice with a guest and waived her finger at her." (Taylor Aff. 2.)  Guests and tourism board representatives complained about Mullins to the Hotel.  (Jones Aff. ¶¶ 4-5; Valdovinos Aff. ¶ 6; Kangas Decl. ¶ 5; Ronkese May 12, 2011

---

[2] The affidavits and documents from Mullins's personnel file were attached to Bondib Hotels' statement of material facts, submitted on May 16, 2011.  The work schedules were attached to Ms. Ronkese's affidavit, submitted on June 14, 2011.

5

Aff. ¶ 6; Aug. 15, 2009 Guest Comment Card ¶ 9.)  Ms. Ronkese, the Front Desk Manager, and Mr. Valdovinos, the Assistant Front Desk Manager, both spoke to Mullins about her attitude and poor performance.  (Valdovinos Aff. ¶ 6; Ronkese May 12, 2011 Aff. ¶ 4.)  Ms. Ronkese threatened to terminate Mullins if her treatment of the guests and potential customers did not improve.  (Ronkese May 12, 2011 Aff. ¶ 5; May 19, 2009 Coach and Counsel Document.)

Additionally, on various occasions Mullins left her co-workers without help.  (Jones Aff. ¶ 4; Paganelli Aff. ¶ 4; Taylor Aff. 1; Feb. 19, 2009 Verbal Warning Document.)  Mullins's co-workers complained about working with Mullins to management and two co-workers asked not to be scheduled with her.  (Jones Aff. ¶ 3; Paganelli Aff. ¶ 6; Taylor Aff. 2; Valdovinos Aff. ¶ 8.)

When Mullins sought to come back to work, the Hotel was entering its slow season, and the front desk hours were reduced due to decreased occupancy.  (Ronkese May 12, 2011 Aff. ¶ 10).  Mullins was believed to be "by far, [the] least valued employee."  (Valdovinos Aff. ¶ 9; Ronkese June 14, 2011 Aff. ¶ 8.)  Accordingly, the Hotel terminated Mullins employment.  (Ronkese June 14, 2011 Aff. ¶ 8.)  This decision was "largely based on performance." (Ronkese May 12, 2011 Aff. ¶ 11).

Since Mullins's maternity leave, the Hotel has not hired a full-time front desk employee.  (Ronkese May 12, 2011 Aff. ¶ 11).  The Hotel hired a part-time clerk for May 2010 through October 2010.  (Ronkese May 12, 2011 Aff. ¶ 11 and attached schedules).  Additionally, on November 27, 2009, the Hotel hired Thomas O'Connor as a part-time night auditor.  (Ronkese June 14, 2011 Aff. ¶ 4.)  The Hotel submitted schedules that reflect that

6

from November 2009 through April 2011, Mr. O'Connor served as night auditor, and not as front desk clerk. (Ronkese June 14, 2011 Aff. Attached Schedules.)

Finally, the Hotel has demonstrated that in the five years prior to Mullin's attempted return from maternity leave there were eight female employees who were returned to their positions after taking maternity leave. (Wacker Aff. ¶ 3.)

The Hotel has met its burden of presenting legitimate, non-discriminatory reasons for terminating Mullins.

### B. Whether Defendants' Reasons are Pretextual

"[O]nce a minimal prima facie case is proved and the employer's nondiscriminatory explanation has been given, the McDonnell Douglas presumptions disappear from the case, and the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." James v. N.Y. Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000). The plaintiff "need not show that defendants' proffered reason was false or played no role in the decision to terminate h[er], but only that it was not the only reason, and that h[er] filing for FMLA leave was at least one motivating factor." Di Giovanna, 651 F.Supp.2d at 205. In other words, Mullins needs to show that the Hotel viewed her "FMLA leave and request to return [as] a negative factor in its decision to terminate h[er]." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 176 (2d Cir. 2006).

Mullins argues that the following evidence, viewed in the most favorable light, would support a jury's inference that she was terminated in retaliation for taking her FLMA leave: (1) Ms. Kangas's expression of concern that Mullins was having a baby with her husband; (2) the change in the Hotel's explanation of why it terminated Mullins—from lack of work to

poor performance; (3) Mullins's ineligibility for rehire while other employees terminated due to lack of work were eligible for rehire; (4) the hiring of a male, O'Connor, after Mullins went on leave; and (5) occasional positive customer feedback for Mullins.

While certainly not a compelled conclusion, Ms. Kangas's expression of "worry" and concern about "how [Mullins] was living" because Mullins's "husband was in prison and she was supporting this little boy on her own," viewed most favorably to Mullins, would support an inference that Kangas had animus toward Mullins for taking FMLA leave to have a child. It certainly presents a question of fact improper for summary judgment. See Esser v. Rainbow Adver. Sales Corp., 448 F. Supp. 2d 574, 582 (S.D.N.Y. 2006) (holding that determining whether plaintiff's boss "was in fact irritated during this meeting and whether that irritation indicates animus toward plaintiff for taking FMLA leave are issues of fact improper for summary judgment.").

Similarly, the initial report that the Hotel terminated Mullins due to lack of work, but without eligibility to be rehired—unlike other similarly situated employees terminated due to lack of work—would support an inference that the Hotel's initial explanation was either pretextual or not its sole reason for terminating Mullins.  While the Hotel now claims that it terminated Mullins due to lack of work and poor performance, the record suggests that the Hotel did not originally assert Mullins was fired for poor performance or cause so that Mullins could collect unemployment benefits.  (See Ronkese June 14, 2011 Aff. ¶ 10; Mullins June 10, 2011 Aff. Ex. E at 13 (Kangas Testimony).)  Whether this suggestion is an accurate inference is a question of fact for the jury.

The Hotel has submitted substantial evidence—including affidavits, guest comments, and Mullins's personnel file—that Mullins's poor performance pre-dated her maternity leave.

Mullins alleges that her former co-workers statements were "not true," not conveyed to Mullins, not referenced in Mullins's personnel file, and that the Hotel must have "prevailed upon these workers to help the Defendant justify the violation of [Mullins's] rights by submitting their affidavits."  (Mullins June 10, 2011 Aff. ¶¶ 33-36.)  The fact that management did not share Mullins's co-workers complaints with her does not mean that the complaints were not true.  Moreover, Mullins concedes that guests and potential customers complained about her performance, which corroborates her co-workers statements.  (See id. ¶ 22.)

Nonetheless, there is sufficient evidence for a jury to reasonably conclude that Mullins was not terminated solely due to her poor performance.  In May 2009, Ms. Ronkese threatened to terminate Mullins if her treatment of the guests and potential customers did not improve.  (Ronkese May 12, 2011 Aff. ¶ 5; May 19, 2009 Coach and Counsel Document.)  The record reflects that Mullins performance did not improve.  (See Taylor Aff. 2 (describing September 2009 incident).)  Nonetheless, the Hotel did not terminate Mullins in May through September 2009.  Rather, the Hotel waited until Mullins requested to return from maternity leave to terminate her, the timing of which support a jury inference that her FMLA leave may have been a contributing factor to the termination.  See Voltaire v. Home Servs. Sys., Inc., --- F. Supp. 2d ---, 2011 WL 4710852, at *18 (E.D.N.Y. Sept. 30, 2011) (denying defendants' motion for summary judgment on FMLA retaliation claim where there was a close temporal proximity between plaintiff's FMLA leave and termination and there was reason to disbelieve defendant's evidence that it had previously intended to terminate plaintiff due to poor performance).

Mullins's remaining arguments are without merit. The fact that the Hotel hired Mr. O'Connor is of no moment, because the Hotel demonstrated that Mr. O'Connor worked as a night auditor—not as front desk clerk. Similarly, while Mullins received some positive customer feedback, she concedes that she received negative feedback, which reflects that her performance was, at least in part, poor.

There is a factual question here that will have to be resolved by a jury: was one of the reasons for the Hotel's terminating Mullins, Mullins's exercising her right to medical leave. Mullins does not have to show that the Hotel's lack of work, and her poor performance "played no role in the decision to terminate h[er], but only that [they] w[ere] not the only reason[s], and that h[er] filing for FMLA leave was at least one motivating factor." Di Giovanna, 651 F.Supp.2d at 205. Viewed together, Kangas's statements, the temporal proximity between Mullins's FMLA leave and her termination, and the Hotel's shifting theory for why it terminated Mullins, create a question of fact as to whether Mullins's maternity leave was one of other negative factors contributing to the Hotel's decision to terminate her employment. See Penberg v. HealthBridge Mgmt., --- F. Supp. 2d ---, 2011 WL 4943526, at *11 (E.D.N.Y. Oct. 17, 2011) (denying summary judgment on FMLA retaliation claim where "[a]ll of the[] facts, taken together, could, if proved credible, support a finding of pretext.") On the other hand, there is sufficient evidence that Mullins was not a good employee, and given her poor performance and bad attitude, the Hotel was well within its rights to terminate her employment.

## CONCLUSION

For the foregoing reasons, Mullins and the Hotel's motions for summary judgment are DENIED. The Clerk of Court is directed to terminate the motions (Dkt. Nos. 17, 20).

Dated: New York, New York
December 22, 2011

SO ORDERED

PAUL A. CROTTY
United States District Judge